Submitted October 29, 2014, affirmed May 4, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GENTRY BROGAN KING,
*Defendant-Appellant.*

Coos County Circuit Court
12CR0819; A153512

373 P3d 1205

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Michael J. Slauson, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

**EGAN, J.**

Defendant appeals a judgment of conviction, following a bench trial, for the crime of luring a minor, ORS 167.057,[1] assigning error to the denial of his motion for judgment of acquittal. Defendant contends that the text message that he sent to the victim did not contain an "explicit verbal description * * * of sexual conduct," as required by ORS 167.057. We reject defendant's argument, because we conclude that a reasonable factfinder could find that defendant used an "explicit verbal description * * * of sexual conduct" for the purpose of inducing a minor to engage in sexual conduct with him when he texted the victim, "I really wanna bang [you]." Accordingly, we affirm.

We view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *see also State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). The same standard of review is applied during a bench trial. *State v. Rodriguez/Buck*, 347 Or 46, 55, 217 P3d 659 (2009) (citing *State v. Allison*, 325 Or 585, 587-88, 941 P3d 1017 (1997)). In light of that standard, the facts material to our review are as follows.

Defendant, a 22-year-old male, met the 13-year-old female victim at a party. Defendant was aware that the victim was 13 years old at that time. A few months later, defendant and the victim met again—at that point defendant was 22 years old and the victim was 14 years old. Defendant gave the victim his cell phone number and they hugged.

Defendant and the victim began to text each other a few days after exchanging phone numbers. In the course of the text message conversations between defendant and the victim, defendant said the following to the victim:

---

[1] ORS 167.057(1) provides, as relevant:

"A person commits the crime of luring a minor if the person furnishes to, or uses with, a minor a visual representation or explicit verbal description or narrative account of sexual conduct for the purpose of inducing the minor to engage in sexual conduct."

"[You are] such a cutie[.]

"\* \* \* \* \*

"[You] should come kick it \* \* \* with me[.] My friend is visiting from Ashland. [We've] been gettin[g] fu[]cked up. Lol.

"\* \* \* \* \*

"[You] made me kinda horny the other day when [you] gave me a hug. Lol. I was like ugh. [I] don[']t wanna [be] at work.

"\* \* \* \* \*

"[You are] way [too] sexy.

"\* \* \* \* \*

"Yes [you are] trust me. Lol. I gotta try so hard [to] not get turned on whenever [I] see [you].

"\* \* \* \* \*

"[You are] a major cutie.

"\* \* \* \* \*

"[You want to] swim with me? \* \* \* I could pick [you] up."

Then defendant and the victim engaged in the following conversation through text message:

"[Victim]:   Hey are you 21 yet?

"[Defendant]:   Yeah[.]

"[Victim]:   Do you care that I'm 14? Lol.

"[Defendant]:   Do [you]?

"[Victim]:   Well, if I were to do anything with you, if we got caught you could get in trouble[.] So, it really only matters if you care.

"[Defendant]:   As long as we keep it secret [I]'m cool with it.

"[Victim]:   So[,] what would we do?

"[Defendant]:   Anything [you] want. I really wanna bang [you]. no lie. Lol.

"[Victim]:   Really? Why?

"[Defendant]:   Cuz [you're] fine."

Defendant was charged with luring a minor and waived a jury trial on that charge. At trial before the court, defendant conceded that "bang," as used in his text message to the victim, is a common phrase for sexual intercourse. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the ground that the text message did not contain an explicit verbal description of sexual conduct, as required to convict him of violating ORS 167.057. The trial court denied the motion and returned a verdict of guilty.

On appeal, defendant reprises his contention that his text message did not contain an explicit verbal description of sexual conduct and, hence, that the trial court erred in denying his motion for a judgment of acquittal. The state responds that the trial court ruled correctly because defendant's text message to the victim was an explicit verbal description of sexual conduct. We agree with the state.

At issue is the meaning of "explicit verbal description *** of sexual conduct" as used in ORS 167.057. Defendant concedes that the text message—"Anything you want. I really wanna bang [you]"—to the victim "was verbal and explicit." However, he contends that "it was not a *description.*" (Emphasis in original.) Therefore, we must resolve what the legislature intended "description" to mean in ORS 167.057. *State v. Jones*, 223 Or App 611, 616, 196 P3d 97 (2008), *rev den*, 345 Or 618 (2009) ("[W]e first address *** question[s] of statutory interpretation, which we review for errors of law.").

In interpreting a statute, we first look at the text and context of the statute, then consider legislative history if it appears useful to the court's analysis. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

We begin with the statutory text of ORS 167.057. Both parties note that there are multiple dictionary definitions for "description." Based on those dictionary definitions, defendant concludes that "the plain naming of a thing is not a description," rather "[a] description supplies details." Defendant argues that "[t]he fact that a statement may

conjure up all manner of salient features, properties, qualities, or details of a thing in the mind of a recipient does not transform that statement into a description of that thing." We disagree.

Using a dictionary definition of "description," an express verbal description of sexual conduct is a "representation" of that conduct "produced by a describing of" it; a statement "intended primarily to present to the mind or imagination graphically and in detail" information about the conduct; or, alternatively, "a statement of the properties of" the sexual conduct "or its relations to other things serving to identify it." *Webster's Third New Int'l Dictionary* 610 (unabridged ed 2002).

In the context of the statute and based on its plain meaning, a "description" can be accomplished with few or many words, as long as the words chosen are intended to bring a graphic sexual image to the mind of the recipient, that is, the words themselves are not necessarily required to be graphic. In other words, regardless of how it affects the recipient, to be a description, the words chosen by the offender must be intended to bring a graphic sexual image to the mind of the recipient. As discussed below, we conclude that defendant's statement understood in context is more than a plain naming of a thing and fits within the plain meaning of "description."

Although dictionary definitions of "description" are a useful starting point to determine what words in a statute mean, we must also consider the context of the statute to determine what the legislature intended the statute to mean. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum. Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)). Here, that context includes the three terms used by the legislature in ORS 167.057.

ORS 167.057 lists three disjunctive terms—"visual representation *or* explicit verbal description *or* narrative

account"—to identify the depictions of sexual conduct that are subject to the prohibition. (Emphasis added.) The legislature's use of "explicit verbal description *or* narrative account" indicates that the two terms have different meanings. *State v. Newell*, 238 Or App 385, 392, 242 P3d 709 (2010) ("If the legislature uses different terms in statutes, we generally will assume 'that the legislature intends different meanings' for those terms." (Quoting *Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006).)). The text of the statute, in which the legislature uses the three terms in the disjunctive, shows that "description" does not mean "narrative." That reasoning supports our understanding of the plain meaning of the statute—that a "description" may include a shorter description than a "narrative account," so long as the words chosen by the offender are intended to bring a graphic sexual image to the mind of the victim.

The legislative history of ORS 167.057 is also useful to our discussion because it shows that the legislature intended "explicit verbal description" to cover sexualized text messaging that explicitly identifies sexual conduct. The legislative history of House Bill (HB) 2843 (2007), set out below, shows that the legislature had two distinct but related goals in enacting the statute: (1) to prevent sex offenders from grooming minors and (2) to prevent grooming at the earliest possible stages.

First, HB 2843 was drafted to prevent sexual predators from grooming minors by furnishing the minors with depictions of sexual conduct, in order to engage in that sexual activity with them. Testimony, House Committee on Judiciary, HB 2843, Apr 6, 2007, Ex E (statement of Assistant Attorney General Michael Slauson). Dr. Curtis Oddo testified that grooming is the act of "a sex offender approaching a child to later commit a sexual act." Tape Recording, House Committee on Judiciary, HB 2843, Apr 6, 2007, Tape 117, Side B (statement of Dr. Curtis Oddo).

Second, hearing testimony on HB 2843 indicates that the bill was enacted to prevent luring of a minor at the earliest possible stages. Michael Slauson of the Oregon Department of Justice, Assistant Attorney General, Internet Crimes Against Children Task Force, testified that HB 2843

"gets at conduct pretty early on in the stage of grooming, specifically looking at the sections dealing with luring. Really the first process used by those who offend children to lower their inhibitions to engage in sexual conduct at some later date. So what that does then is it gets at the most early conduct, the first point of attack."

Tape Recording, House Committee on Judiciary, HB 2843, Apr 6, 2007, Tape 117, Side A (statement of Michael Slauson). Jodie Bureta of the Marion County District Attorney's Office also testified that "prosecutors desperately need this tool in order to hold predators accountable in order to prevent children from being abused. A large part of the cases involve both giving pornography to children *and luring children through sexually explicit conversation online [and] through text messaging*[.]" Tape Recording, House Committee on Judiciary, HB 2843, Apr 6, 2007, Tape 117, Side A (statement of Jodie Bureta) (emphasis added).

In light of the text, context, and legislative history of ORS 167.057, in using the term "explicit verbal description * * * of sexual conduct," the legislature intended to target the explicit identification of sexual conduct when that identification is intended to bring a graphic sexual image to the mind of the recipient; consequently, our analysis must take into account the context in which it is made.

Next, we must decide whether the evidence adduced suffices to satisfy the legal requirements of ORS 167.057 as properly interpreted. "In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *King*, 307 Or at 339.

We conclude that the state presented sufficient evidence for a reasonable factfinder to conclude that defendant used an "explicit verbal description * * * of sexual conduct" for the purpose of inducing a minor to engage in sexual conduct with him. In this case, we are not just analyzing whether a single word sufficiently "describes" a type of sexual conduct.

Rather, we are analyzing a sentence in response to a question in the context of defendant's and the victim's texting history.

Here, the encounter between defendant and the victim did not take place on a single isolated occasion—they met at a party several months before when defendant was aware that the victim was a minor and then he continued to seek out communication with her after that. Defendant approached the victim with the intent to later commit a sexual act with her. He used sexualized conversation to communicate with the victim: "[you are] such a cutie," "[you are] way [too] sexy," "[you] made me kinda horny," "I gotta try so hard [to] not get turned on whenever [I] see [you]," "[you want to] swim with me," "I really wanna bang [you]." An adult defendant engaging in a sexualized text message conversation with a minor victim for the purpose of later committing a sexual act with her is the "most early conduct" that the legislature intended to punish. Thus, looking at all of the facts, the state presented evidence from which a factfinder could conclude that defendant engaged in the conduct—grooming—that the legislature sought to prevent.

Moreover, defendant and the victim were discussing the possibility of doing something sexual together that could get defendant in trouble because he was an adult and the victim was a minor. The victim asked defendant "what would we do?" and defendant responded "[a]nything [you] want. I really wanna bang [you]. no lie." Defendant concedes that "bang," as used in his text message to the victim, is a common phrase for sexual intercourse. Additional dictionary definitions of "bang" include: "to copulate with—usu[ally] considered vulgar"; "to thrust, put, push, or force vigorously often with a sharp noise"; and "to treat roughly or carelessly." *Webster's* at 171. As a result, defendant's response to the victim's question is a representation of the type of sexual conduct that he wanted to engage in with the victim—vulgar, rough, careless intercourse. Such a statement adequately describes a type of sexual conduct that an adult male "really" wanted to engage in with a 14-year-old female victim and rules out other possible forms of sexual conduct.

ORS 167.051(3) (defining "sexual conduct").[2] Therefore, a reasonable factfinder could infer that defendant intended to bring a graphic sexual image to the mind of the victim— *viz.* a description of sexual conduct—when he chose the words—"I really wanna bang [you]"—in the context of his communications with the victim.

In sum, a reasonable factfinder could have found that defendant's text message fell within the prohibition of ORS 167.057. Accordingly, the trial court did not err when it denied defendant's motion for judgment of acquittal.

Affirmed.

**ARMSTRONG, P. J.,** dissenting.

The majority concludes that the trial court correctly denied defendant's motion for a judgment of acquittal because the text message that defendant sent to the victim contained an explicit verbal description of sexual conduct that came within the prohibition imposed by ORS 167.057. In reaching that result, the majority concludes that a person violates ORS 167.057 by sending to a minor a communication that is intended to bring a graphic sexual image to the minor victim's mind. I believe that the majority's construction of ORS 167.057 is fundamentally flawed. In my view, the statute reaches only communications that convey to minors certain types of sexually explicit information for the purpose of inducing them to engage in sexual conduct. The text message that defendant sent to the victim identified, but did not describe, the sexual conduct in which defendant wanted the victim to engage. Because ORS 167.057 required the text message to communicate more than it did for the message to violate the statute, the majority is wrong to affirm defendant's conviction for violating ORS 167.057.

---

[2] ORS 167.051(3) defines "sexual conduct" as:

"(a) Human masturbation or sexual intercourse;

"(b) Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;

"* * * * *

"(d) Touching of the genitals, pubic areas or buttocks of the human male or female or of the breasts of the human female."

Defendant, who was 22 years old, and the victim, who was 14 years old, began exchanging text messages several months after they met at a party. Defendant sent the victim text messages telling her that she was "sexy," "a cutie," and that she made him "horny." Eventually, defendant sent the victim a text message stating, "I really wanna bang [you]."

The state charged defendant by indictment with the crime of luring a minor, ORS 167.057, alleging that defendant had sent the victim a text message containing "an explicit verbal description of sexual conduct" to induce the victim to engage in sexual conduct with him. At trial, defendant admitted that the word "bang," as used in his text message to the victim, referred to sexual intercourse. Defendant ultimately moved for a judgment of acquittal, contending that, while his text message identified the sexual conduct in which he wanted to engage with the victim, it did not contain a verbal description of that conduct, as required to convict him under ORS 167.057.

The trial court disagreed. It concluded that defendant's text message to the victim stating that he wanted to bang her could be understood to communicate, "I want to take your clothes off, look at your body, and then insert my penis in your vagina." Based on that understanding of the text message, the court denied defendant's motion and convicted him of the crime. Defendant reprises on appeal his contention that his text message did not contain an explicit verbal description of sexual conduct and, hence, that the trial court erred in denying his motion for a judgment of acquittal.

The majority concludes that ORS 167.057 criminalizes the "identification of sexual conduct when that identification is intended to bring a graphic sexual image to the mind of the recipient." 278 Or App at 71. The majority states that the word "bang" can mean rough or careless sex. Consequently, it reasons, the text message "rules out other possible forms of sexual conduct" and a "reasonable factfinder could infer that defendant intended to bring a graphic sexual image to the mind of the victim," thereby violating the prohibition against providing the victim with an explicit

verbal description of sexual conduct. *Id.* at 72-73. For the reasons explained below, I disagree with the majority's construction of ORS 167.057.

ORS 167.057(1) provides, as relevant to this case:

"A person commits the crime of luring a minor if the person furnishes to, or uses with, a minor * * * a visual representation or explicit verbal description or narrative account of sexual conduct for the purpose of inducing the minor * * * to engage in sexual conduct."

The statute uses three terms to identify the depictions of sexual conduct that the statute proscribes. All of them identify forms of communication that necessarily convey significant information or detail about the subject that they address, *viz.*, sexual conduct. For example, a visual representation of sexual conduct is a "likeness, picture, model, or other reproduction" of that conduct. *Webster's Third New Int'l Dictionary* 1926 (unabridged ed 2002) (defining "representation"). Likewise, a verbal description of sexual conduct is a "representation" of the conduct. *Id.* at 610 (defining "description" as a "representation produced by a describing of" the thing described). Finally, a narrative account of sexual conduct is "a statement of facts or events" about sexual conduct conveyed in "the form of a story." *Id.* at 13, 1503.

The communicative content of each type of expression that the statute proscribes will differ. Consistent with the aphorism that a picture is worth a thousand words, a visual representation of sexual conduct would likely contain more information about that conduct than would an explicit verbal description of it. In that vein, it might be difficult to reproduce the information content of a photograph of the Mona Lisa in fewer than a thousand words. Relatedly, the iconic status of the Mona Lisa would lead most adults in the United States to summon to mind a graphic visual image of the Mona Lisa simply by being told that that was the subject of the photograph. Nonetheless, a person who told another person that the subject of the photograph was the Mona Lisa would not be understood to have given the other person an "explicit verbal description" of the photograph or its subject. According to the majority, however, the person could be understood to have done just that. The majority's

effort to construe the statute to reach defendant's conduct is understandable, but it is not faithful to the language that the legislature chose to impose the prohibition that it did.

The prohibition in ORS 167.057 is intended to protect children against sexual exploitation by preventing people from providing certain types of sexually explicit expressive materials to children to induce them to engage in sexual conduct, as the legislative history of the statute confirms. The 2007 bill that enacted ORS 167.057, House Bill (HB) 2843, was the product of an ad hoc task force created by Senator Kate Brown and Representative Andy Olson. *See* Tape Recording, House Committee on Judiciary, HB 2843, Apr 6, 2007, Tape 117, Side A (statement of Sen Kate Brown). At the committee hearings on the bill, members of the task force explained that the bill was intended to criminalize the type of grooming behavior in which sexual offenders provide children with sexually graphic communicative materials to make them familiar and comfortable with sexual activity. *See* Testimony, House Committee on Judiciary, HB 2843, Apr 6, 2007, Exhibit E (statement submitted by Michael Slauson, Assistant Attorney General and task force member) (states that HB 2843 was drafted to prevent sexual predators from grooming children to engage in sexual activity by giving them depictions of people engaged in that activity); Tape Recording, House Committee on Judiciary, HB 2843, Apr 6, 2007, Tape 117, Side B (statement of Dr. Curtis Oddo, task force member) (explains that sexual offenders often groom child victims by exposing them to sexually explicit materials because exposure familiarizes them with sexual acts and makes them more comfortable with them).

The legislature chose the terms that it did to identify the communicative materials that it intended to prevent people from giving to children to induce them to engage in sexual conduct. Contrary to the majority's view, the text message that defendant sent to the victim to induce her to engage in sexual conduct did not contain an explicit verbal description of sexual conduct. Hence, the trial court erred in denying defendant's motion for a judgment of acquittal, and the majority errs in concluding otherwise.