No. 1013          November 26, 2025          205

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HUGO AGUSTIN CORREA-SANCHEZ,
aka Hugo Agustin Correa,
*Defendant-Appellant.*

Washington County Circuit Court
22CR31347; A181880

Theodore E. Sims, Judge.

Argued and submitted August 20, 2025.

Sarah De La Cruz, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Convictions on Counts 6 and 11 reversed; remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction, entered after a bench trial, for unlawful sexual penetration in the first degree, ORS 163.411, unlawful sexual penetration in the second degree, ORS 163.408, two counts of sexual abuse in the first degree, ORS 163.427, eight counts of luring a minor, ORS 167.057, and one count of purchasing sex with a minor, ORS 163.413. In his first assignment of error, defendant contends that the trial court plainly erred when it did not strike testimony that was tantamount to vouching for the credibility of a witness. Because that testimony was not unambiguously vouching, any error was not plain. In his second through fifth assignments of error, defendant contends that the trial court erred in denying his motions for judgments of acquittal on Counts 6, 7, 10, and 11, because the evidence was insufficient to prove that the text messages defendant furnished to a minor contained a "visual representation or explicit verbal description * * * of sexual conduct." We affirm the trial court's denial of the motion for judgment of acquittal on Counts 7 and 10 but reverse as to Counts 6 and 11. In his sixth through eighth assignments of error, defendant challenges the trial court's imposition of fines. Because we remand for resentencing, we do not reach defendant's plain error arguments regarding the fines that the court imposed.

By way of background, defendant's convictions were based on evidence that, on a regular basis, he sexually abused C, his stepdaughter, beginning when she was approximately eight years old, by touching her breasts, buttocks, and vagina, and coming into her bedroom at night to force her to watch him masturbate. When she was in high school, C obtained a lock for her bedroom door that defendant was unable to open. After that, defendant began to send her sexually explicit text messages, photographs, and videos, and offered to pay her money in exchange for oral sex. When she was 17, she reported the abuse to the police and defendant was subsequently arrested.

*Vouching*

In his first assignment of error, defendant argues that the trial court plainly erred when it failed to strike

testimony from an investigating officer that C's body language "made me think she was reliving the incident." An error is "plain" when it is "an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Defendant argues that the officer's testimony was tantamount to vouching and thus plainly inadmissible.

When faced with a plain error argument on appeal that involves allegations of vouching, our first step is to determine whether the vouching was unambiguous or ambiguous. *State v. E. J. R.,* 341 Or App 488, 493, 576 P3d 1051 (2025). "Whether a statement constitutes vouching depends on the context in which it arose and the context of how it was offered at trial." *Id*. (internal quotation marks omitted). Our "key inquiry is whether the testimony at issue directly expressed an opinion on the truth of another witness's statement or merely tended to show that another witness either is or is not telling the truth." *Id*. (internal quotation marks omitted). "If a witness unambiguously vouched, it is plain error not to have stricken the testimony, even absent an objection." *Id*. (internal quotation marks omitted). "Conversely, if a witness's testimony was ambiguous *** there is no plain error in not having stricken the testimony *sua sponte*, in part because the lack of objection prevented clarification of the testimony." *Id*. (internal quotation marks omitted).

On this record, the challenged testimony was ambiguous vouching. The investigating officer, Matsukado, was instructed not to opine about whether he believed C and was then asked to describe what he noticed about C's body language during his interview of her. Matsukado testified that C was hunched over with her arms tucked in and her feet and knees together, and that he "got the feeling that she was shielding herself, and particularly shielding her genitalia, *** it seemed like she was trying to really cover her breasts and her vagina." He testified that her tone of voice was "shaky" and that her eyes would tear up whenever she talked about the sexual abuse, and that "when she would do that, she'd always look down." He then explained that he

had learned that "when people recall things from memory, if it's something they've seen, they tend to look up. If it's something they've heard, they look left or right. And, if they look down, they're recalling like being there, like actually—to me, it made me think she was reliving the incident."

Matsukado's testimony did not directly provide an opinion on C's truthfulness. Instead, it provided facts that "tended to show that another witness either is or is not telling the truth." *Id.* (internal quotation marks omitted). Because the statements here were ambiguous as to whether they were vouching, there is no plain error.

### Insufficient Evidence

In his second through fifth assignments of error, defendant argues that the trial court erred in denying motions for judgments of acquittal on four counts (Counts 6, 7, 10, and 11) of luring a minor. On review, "[w]e view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. King*, 278 Or App 65, 66, 373 P3d 1205 (2016).

Defendant was charged with a total of eight counts of luring a minor. Each count was based on text messages that defendant sent C on a particular date. C testified generally about the sexually explicit text messages, photos, and videos that defendant sent to her but did not discuss any one of them in detail. Investigating officers took photographs of messages that were displayed on her phone, and those photographs were admitted into evidence. The text messages were in Spanish, and some of them were sent along with sexually explicit images or videos. At trial, the state introduced the messages, and the accompanying images and videos. The state also presented English translations of the messages.

In the four challenged counts, defendant was charged on the basis that he furnished a "visual representation or explicit verbal description * * * of sexual conduct" to a minor "for the purpose of inducing a minor to engage in sexual conduct." ORS 167.057(1). Specifically, Counts 6, 7, and 10 related to "explicit verbal descriptions," and Count

11 related to a "visual representation." As we understand defendant's argument, he challenges the sufficiency of the state's proof as to the first element only—whether the messages he sent to C were a "visual representation or explicit verbal description * * * of sexual conduct"—and we confine our discussion to that element. And for Counts 6, 7, and 10, defendant specifically argues that the state did not present sufficient evidence to prove that the phrases he used in his text messages to C referred to "sexual conduct."

Sexual conduct is defined in ORS 167.051(3) as:

"(a)   Human masturbation or sexual intercourse;

"(b)   Genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex or between humans and animals;

"(c)   Penetration of the vagina or rectum by any object other than as part of a medical diagnosis or as part of a personal hygiene practice; or

"(d)   Touching of the genitals, pubic areas or buttocks of the human male or female or of the breasts of the human female."

A "visual representation" or "explicit verbal description" of "sexual conduct" must thus be a visual depiction or explicit verbal description of one of those acts enumerated in ORS 167.051(3)(a) to (d).

After a review of the record, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on Counts 7 and 10. The January 5, 2021 (Count 7), text message stated "[C] Yano aguanto Yelp quiero aser por atras," and was accompanied by a photograph of defendant's penis. Although the state's witnesses were unable to translate the first part of the message, they both agreed that the second half of the phrase—"quiero aser por atras"— meant "I want to do it from behind." A factfinder could reasonably infer from the context that defendant was expressing his desire to engage in sexual intercourse with C using a common, and informal, phrase. And we have previously held that common phrases can be understood as having particular sexual meanings. *King*, 278 Or App at 72-73 (the defendant's statement of "I really wanna bang [you]" included a common

phrase for sexual intercourse and described sexual conduct as defined by ORS 167.051(3)); *see State v. Rudd*, 307 Or App 610, 478 P3d 603 (2020), *rev den*, 367 Or 827 (2021) (text message stating "You looking for some dick?" in the context of the defendant's entire exchange with purported minor would allow a reasonable factfinder to infer that it was a reference to sexual conduct involving the recipient of the defendant's text and the defendant's penis). Because a reasonable factfinder could conclude that the January 5, 2021, text message, accompanied by a photograph of defendant's penis, contained a description of sexual intercourse, the trial court did not err in denying the motion for judgment of acquittal on Count 7.

The January 11, 2021 (Count 10), text message stated "[C] tomate un foto y mándamela es major la foto que tocarte ala fuerza plis." That translated to either "[C] take a photo and send it to me, it is better the photo than touching you by force" or a request for C to take a picture and send it to defendant, and that "a picture is better or preferred than obligating or insisting" or, as translated in the exhibit, "forcing," "please." The evidence before the trial court included C's testimony that defendant had regularly touched her breasts, buttocks, and vagina against her will for many years, and that he had forced her to watch him as he touched himself. There was also evidence that, in the preceding week, defendant sent C two text messages saying "this is how I want to have you" together with sexually explicit photographs, and that defendant had sent C at least six photographs of his penis, some of which depicted him masturbating.[1] On that record, a rational factfinder could find that defendant's reference to "touching by force" referred to sexual touching rather than some other kind of touching. The trial court did not err in denying defendant's motion for judgment of acquittal on that count.

We reach a different conclusion regarding the December 28, 2020 (Count 6), and March 31, 2022 (Count 11),

---

[1] In both *Rudd* and *King*, we looked to the text message exchange between the defendant and the minor (or purported minor) victim. However, that was because the defendant and the victim had little or no in-person history to consider. Here, by contrast, the state presented evidence of a lengthy history of sexual abuse, which may inform whether the content of the communications defendant sent referred to "sexual conduct" as defined by ORS 167.051(3).

messages. The December 28 message stated: "[C] tenure tus machetes de tú pompis." The photograph of C's phone shows that the message appears on the screen following a text message, sent by C to defendant a few hours earlier, which contains a grocery list. C did not provide any additional testimony about that message, and the state's translation witnesses both testified that they were only able to translate a portion of the message. Neither could translate the term "tenure," but they both translated the rest of the message as "your machetes of your buttocks." Critically, neither witness was able to make sense of the relationship between the concepts mentioned, or to illuminate what the reference to "machetes" means in that context. Because there is no evidence in the record that establishes what the verbal description means, and because it is not obviously sexual in nature, no reasonable factfinder could infer that the message contains a description of "sexual conduct" within the meaning of the statute. Accordingly, we reverse defendant's conviction on Count 6.

As to the March 31, 2022 (Count 11), message, which was a photograph of defendant's penis, we accept the state's concession that that evidence is insufficient to support a conviction for luring a minor. Because the photograph does not depict masturbation or touching of the genitals, and does not otherwise depict intercourse, penetration, or genital contact, that "visual representation" is not a representation of "sexual conduct" as defined by ORS 167.051(3). We therefore reverse defendant's conviction on Count 11 as well.

Convictions on Counts 6 and 11 reversed; remanded for resentencing; otherwise affirmed.