Argued and submitted May 21, affirmed September 10, 1997

# STATE OF OREGON,
## *Respondent,*

*v.*

# DONALD SPERRY,
## *Appellant.*

## (96-04-42323; CA A94027)

945 P2d 546

Michele Kohler argued the cause for appellant. With her on the brief was Ranson, Blackman & Maxfield.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Defendant appeals from a judgment of conviction for attempted prostitution. ORS 167.007; ORS 161.405(1). He argues, *inter alia*, that the trial court erred in denying his motion for judgment of acquittal. We affirm.

Although the procedural sequence that underlies this appeal is unusual and somewhat complex, the events that resulted in defendant's arrest are straightforward. Defendant was driving on N.E. Sandy Boulevard in Portland and saw a woman whom he believed to be a prostitute, but who was, in fact, Portland Police Officer Thompson on undercover duty. Defendant stopped and asked Thompson what she charged for her "services." After discovering that he did not have cash to pay the quoted amount, defendant told Thompson that the "deal [was] off" and drove away. Other officers immediately arrested defendant, and he was ultimately indicted for attempted prostitution under ORS 167.007 (Count 1) and prostitution procurement activity under Portland City Code § 14.24.055 (Count 2).[1]

Defendant filed a pretrial motion to "Dismiss Either Count One Or Count Two Or In The Alternative To Declare Them A Single Offense." He argued that the two offenses were, in fact, the same offense and, therefore, under double jeopardy principles, he could not be convicted and sentenced for both. The trial court denied the motion, concluding that

---

[1] ORS 167.007 provides, in part:

"(1) A person commits the crime of prostitution if:

"(a) The person engages in or offers or agrees to engage in sexual conduct or sexual contact in return for a fee; or

"(b) The person pays or offers or agrees to pay a fee to engage in sexual conduct or sexual contact."

Portland City Code § 14.24.055 provides:

"(a) * * * As used in this Section, 'prostitution procurement activity' means any conduct by any person that constitutes a substantial step in furtherance of an act of prostitution. Such activity includes, but is not limited to, lingering in or near any street or public place, repeatedly circling an area in a motor vehicle, or repeatedly beckoning to, contacting, or attempting to stop pedestrians or motor vehicle operators.

"(b) It is unlawful for any person to engage in any prostitution procurement activity with an intent to induce, entice, solicit, procure, locate, or contact another person to commit an act of prostitution."

the ordinance prohibited additional activities beyond those the statute proscribed, and, thus, that the offenses were not the same. The case was tried before a jury and, at the close of the state's case-in-chief, defendant moved for a judgment of acquittal on both counts. He argued that he had pleaded the affirmative defense of renunciation, ORS 161.430,[2] and that, even when viewed most favorably to the state, the state's own evidence showed that defendant had renounced his criminal intentions. After hearing argument as to whether the evidence was sufficient to show renunciation, the trial court expressed some confusion as to whether, because defendant was relying on an affirmative defense, defendant had to produce affirmative evidence of that defense before the court could grant a judgment of acquittal. Nevertheless, the court ultimately concluded that it would allow a judgment of acquittal on Count 1 but reserve ruling with respect to Count 2:

> "I know it's very thin, but I am going to grant the motion on the attempt [Count 1]. I could be wrong on this, and I know I cut the state off completely, but it seems to me that in the state's case-in-chief, the evidence is [defendant] just left. * * * He said later when interrogated, 'Temptation is a terrible thing,' and I think that goes to the change of heart. * * * And I might be wrong, but that's what I'm ruling."

The court then excused the jury for the day.

The next morning, outside the presence of the jury and before any further proceedings occurred, the state renewed its objections to the court's ruling on Count 1. The court reversed itself on that ruling, concluding that defendant had the burden of producing evidence to support his affirmative defense, and reinstated Count 1.[3] Defendant then

---

[2] ORS 161.430 provides:

"(1) A person is not liable under ORS 161.405 if, under circumstances manifesting a voluntary and complete renunciation of the criminal intent of the person, the person avoids the commission of the crime attempted by abandoning the criminal effort and, if mere abandonment is insufficient to accomplish this avoidance, doing everything necessary to prevent the commission of the attempted crime.

"(2) The defense of renunciation is an affirmative defense."

[3] The trial court reversed its ruling based on its understanding of *State v. Caswell*, 53 Or App 693, 633 P2d 24, *rev den* 292 Or 108 (1981). Defendant does not argue on appeal that the court's application of *Caswell* was error.

presented his case and thereafter moved again for a judgment of acquittal on both counts, arguing that the court's initial oral ruling on Count 1 had effected an acquittal and that, consequently, any further proceedings on Count 1 would violate the state and federal constitutional bars against double jeopardy. He further argued that, because Count 1 and Count 2 were the same offense, the court's judgment of acquittal on Count 1 necessarily required a judgment of acquittal on Count 2. The trial court disagreed, concluding that its oral allowance of the judgment of acquittal at the conclusion of proceedings on one day did not preclude it from revisiting the issue the next morning. Consequently, the court denied defendant's motion with respect to both counts.

The jury ultimately found defendant guilty on both counts. The court entered judgment of convictions and sentences on both offenses. However, the court thereafter *sua sponte* amended the original judgment and ordered that Count 2 be merged into Count 1.[4] Consequently, the judgment against defendant convicted and sentenced him only under Count 1, *i.e.*, the statutory violation.

■ On appeal, defendant raises four assignments of error. He first challenges the trial court's denial of his pretrial motion to dismiss either Count 1 or Count 2, or to treat them as a single offense. He argues that both counts constituted the same offense and that, as such, the state's decision to proceed on both counts violated the "rule against multiplicity," which defendant describes as "the long-standing principle that an accusatory instrument may not charge a single offense in several counts." The purpose of that "rule," which is derived from double jeopardy concerns, is to protect against multiple punishments for a single offense. *See, e.g., Simpson v. United States*, 435 US 6, 11 n 5, 98 S Ct 909, 55 L Ed 2d 70 (1978); *United States v. UCO Oil Co.*, 546 F2d 833, 835 (9th Cir 1976), *cert den* 430 US 966 (1977).

---

[4] The amended judgment states, in part:

"Now therefore, it is hereby ordered that the original judgment of conviction entered herein on June 25, 1996 is amended to merge count two (Prostitution Procurement Activity) into count one (Attempted Prostitution) for the purposes of conviction and sentencing."

In this case, and assuming, without deciding, that the city ordinance and the state statute did, in fact, constitute a single offense, defendant was protected from multiple punishments, because the trial court ultimately entered only one conviction.[5] Thus, the vice that the "rule against multiplicity" addresses was avoided. Any error was harmless.

Defendant nevertheless argues that "pyramiding" his single offense into multiple counts created other types of prejudice:

> "Creating the impression that multiple punishments may be imposed can seriously distort a defendant's response to an accusation. * * *
>
> "As for jury prejudice, creating the appearance that the defendant's alleged conduct violated more laws than it did is especially dangerous when the laws of superficially separate governmental authorities are involved. This communicates to the jury the irrelevant but maligning message that distinct official entities have felt compelled to legislate against the kind of conduct he is alleged to have committed. Implicit in such communication is the message that the jury has a civic duty to do its part in attacking the problem by convicting the defendant."

Although those concerns are arguably valid in some practical sense, we are unaware of any authority—and defendant provides none—for the proposition that those possible side effects of multiple charging require reversal of an otherwise valid conviction.[6] We therefore conclude that the trial court did not err in denying defendant's pretrial motion.[7]

---

[5] Although it is true that the jury found defendant guilty on both counts, the "conviction" that matters in this case is the *judgment* of conviction. *See State v. Morales*, 21 Or App 827, 832, 537 P2d 109 (1975) ("In the present context, when we say that two convictions are not permitted, we mean that the trial court cannot enter two separate *judgments* of conviction." (Emphasis in original.)).

[6] Defendant cites numerous cases in support of this argument. We have reviewed them and find no persuasive authority in support of his position.

[7] Defendant also argues that the trial court's denial of his pretrial motion violated double jeopardy principles. Double jeopardy protects a defendant against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, or (3) multiple punishments for the same offense. *State v. Whittlinger*, 142 Or App 308, 919 P2d 1206 (1996), *citing State v. Rezin*, 139 Or App 156, 159, 911 P2d 1264, *opinion withdrawn by order* (1996) (citing *United States v. Halper*, 490 US 435, 440, 109 S Ct 1892, 104 L Ed 2d 487

Defendant's second assignment of error challenges the trial court's "rescinding [of] the judgment of acquittal" on Count 1. Defendant argues that, pursuant to ORS 136.445 and ORS 131.505(6), and under Oregon Constitution, Article I, section 12,[8] and the Fifth Amendment to the United States Constitution,[9] once the court pronounced its ruling granting the motion for a judgment of acquittal on Count 1, the state was barred from any further prosecutions of that count. Consequently, defendant reasons, the trial court could not subsequently reverse itself and reinstate the count.[10] The state counters that the court was free to reconsider its ruling until the ruling was in writing and signed by the judge.

■     As described below, we do not agree with the state that, *as a constitutional matter*, double jeopardy can *never* arise unless or until a court's ruling granting a judgment of acquittal is reduced to writing. Nevertheless, under the circumstances presented here, the trial court could reconsider and withdraw its ruling without violating either the applicable statutes, ORS 136.445 and ORS 131.505, or constitutional prohibitions. We begin with the statutory issues. *See State v. Moylett*, 313 Or 540, 545, 836 P2d 1329 (1992) ("All issues [of criminal procedure] should first be addressed on a subconstitutional level."). ORS 136.445 provides:

"In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. *The court shall grant the motion if the evidence introduced* theretofore is such as would not support a verdict against the defendant. *The acquittal shall be a bar to another prosecution for the same offense.*" (Emphasis supplied.)

---

(1989)). If the trial court had not merged the two convictions, the third concern *might* have been implicated. However, because of the ultimate merger, the trial court's pretrial ruling did not, even arguably, effect some violation of double jeopardy.

   [8] Article I, section 12, provides:

      "No person shall be put in jeopardy twice for the same offence[.]"

   [9] The Fifth Amendment provides, in part:

      "No person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb[.]"

   [10] Defendant does not argue that the trial court's ultimate ruling—*i.e.*, that, under *Caswell*, defendant was not entitled to a judgment of acquittal—was wrong on the "merits."

ORS chapter 136 does not define "acquittal," and we have found no authority directly defining that term in ORS 136.445. However, ORS 131.505 defines operative terms for purposes of the statutory bar against former jeopardy. *See* ORS 131.505 to ORS 131.575.[11] ORS 131.505(6) provides:

"(6)  There is an 'acquittal' if the prosecution results in a finding of not guilty by the trier of fact or *in a determination that there is insufficient evidence to warrant a conviction*." (Emphasis supplied.)

■  Defendant argues in this case that: (1) the trial court's oral pronouncement was a "determination that there [was] insufficient evidence to warrant a conviction," ORS 131.505(6); and (2) that "determination" was an "acquittal" for purposes of the double jeopardy bar described in ORS 136.445. We agree with defendant that "acquittal" in ORS 136.445 can and should be construed by reference to ORS 131.505(6). *See State v. Wolfs*, 312 Or 646, 649-51, 826 P2d 623 (1992) (analyzing relationship among ORS 136.445, 131.505(6), and 131.515). However, we are not persuaded that a trial court's oral pronouncement is, by itself, a "determination" triggering the statutory bar against a subsequent or renewed prosecution.

■  Our conclusion in that regard rests on the oft-reiterated principle that a trial court's oral ruling is not binding until reduced to writing and, unless executed in open court, is not effective until filed with the clerk. *Clark v. Auto Wholesale Co., Inc.*, 237 Or 446, 448, 391 P2d 754 (1964); *Robinson v. Phegley*, 93 Or 299, 301, 177 P 942 (1919); *Conley and Conley*, 97 Or App 134, 137, 776 P2d 860 (1989); *see* ORS 3.070 ("If [the matter is] signed other than in open court, [the matter] * * * shall become effective from the date of entry in the register."); *see also State v. Jackson*, 141 Or App 123, 126, 917 P2d 34 (1996) ("a written judgment prevails over oral statements by a court that underlie the judgment"). There is nothing in the text or context of ORS 131.505(6), or in the legislative history of that statute, that indicates that the legislature intended that an oral ruling allowing a motion for judgment of acquittal differs in that respect from any other

_____

[11] Those provisions include ORS 131.515(1), which provides, generally, that "[n]o person shall be prosecuted twice for the same offense."

ruling. Because the trial court's oral ruling was not a "determination" for purposes of ORS 131.505(6), it did not effect an "acquittal" for purposes of ORS 136.445.

That, however, disposes only of the statutory issue. As noted, defendant raises double jeopardy arguments under Article I, section 12, as well as under the Fifth Amendment. Relying on authority from other jurisdictions,[12] defendant argues that, as a constitutional matter, the court's oral ruling precluded further prosecution. Defendant's arguments under the state and federal constitutions both rest, without differentiation, on that premise. The state responds, in part:

> "[T]he initial ruling was oral, not written, and made before the defense committed itself to a final course of action. This is not an instance of defendant detrimentally relying on a court's oral acquittal and confessing to a crime for which he thought prosecution [was] barred. Nor is this an instance where, having rested, the state sought to offer additional facts to bolster its case."

■     The issue is one of first impression in Oregon, and its resolution is by no means clear. There is, indeed, substantial appeal to defendant's "bright-line" position that, once a trial judge utters the "magic words" of acquittal, further prosecution is precluded. Moreover, to the extent the state is urging that, as a constitutional matter, the oral allowance of a judgment of acquittal is *never* entitled to preclusive effect, that position is constitutionally unsupported and practically unworkable. Nevertheless, we do agree with the state that an oral ruling allowing a motion for judgment of acquittal is not preclusive, and may be rescinded, where, as here, neither the parties nor the court have detrimentally relied on that ruling—*e.g.*, through presentation of arguments, introduction of evidence, or instruction or discharging of the jury—in the interval between the oral allowance and rescission.

In so concluding, we find the analysis expressed in *United States v. Baker*, 419 F2d 83 (2d Cir 1969), *cert den* 397 US 976 (1970), to be instructive and persuasive. In that case, the court considered a double jeopardy argument almost

---

[12] *Tinker v. State*, 549 NE2d 1065 (Ind App 2d Dist 1990); *Lowe v. State*, 242 Kan 64, 744 P2d 856 (1987); *People v. Warren* 437 NYS2d 19, 80 AD2d 905 (1981).

identical to that urged here. The Second Circuit concluded that the trial court's reconsideration of its oral granting of a motion for a judgment of acquittal and subsequent reinstatement of a charge did not violate the Fifth Amendment's double jeopardy bar:

> "In the case before us, no final judgment of acquittal was ever entered, and certainly Baker was not subjected to the harassment of successive prosecutions. Nor did the prosecution seek a delay in order to obtain a more favorable opportunity to convict. The only prejudice Baker suffered is psychological; his hopes were first raised, then quickly lowered. But so ephemeral and insubstantial an injury is not proscribed by the Constitution." *Id.* at 89.

Here, as in *Baker*, it is arguable that defendant may have suffered some incremental psychic distress from believing overnight that one of the charges against him had been dismissed and learning the next morning that it had not. "So ephemeral and insubstantial an injury is not proscribed by the Constitution." *Baker*, 419 F2d at 89. Conversely, none of the other concerns that underlie double jeopardy protections was implicated. Defendant was "not subjected to the harassment of successive prosecutions." *Id.* Nor did the state gain any tactical advantage or defendant incur any tactical detriment. *See State v. Bannister*, 118 Or App 252, 257, 846 P2d 1189 (1993) ("The purpose of the former jeopardy rule is to protect defendants from harassment by the state and to prevent the state from seeking to hone its case against a defendant through repeated prosecutions.").

Here, as in *Baker*, nothing substantive occurred between the court's oral pronouncement of the order and its oral reversal of the order. Nor does defendant suggest that the state engaged in prosecutorial misconduct or that the court's actions in any way affected the jury's factfinding process.[13] We thus conclude that the trial court's reinstatement of

---

[13] Moreover, defendant's reliance on the holdings of other jurisdictions, *see* 149 Or App at 698 n 12, is unpersuasive. In *Tinker* and *Warren*, the defendants' cases were tried to the court, and, in both cases, the triers of fact resolved the issues in favor of the respective defendants and pronounced their resolutions in open court. In *Lowe*, the parties *conceded* that the court's oral pronouncement granting a judgment of acquittal was an effective acquittal. Not one of these cases is significantly factually similar to the case before us.

Count 1 did not violate the double jeopardy rule under either Article I, section 12, or the Fifth Amendment. Accordingly, the trial court committed no error in rescinding its oral ruling and in reinstating Count 1.

Defendant's third assignment of error challenges the trial court's denial of his motion for judgment of acquittal on Count 2. Defendant's argument is that, because the trial court granted an acquittal on Count 1 and because Count 1 and Count 2 are the same offense, the trial court necessarily had to grant an acquittal on Count 2 as well. Our disposition of the second assignment of error, that there was no judgment of acquittal on Count 1, necessarily defeats that argument.

Defendant's final assignment of error challenges the court's instructions to the jury regarding his renunciation defense. The trial court instructed the jury as follows:

"The defendant has raised the affirmative defense of renunciation to the charges of Attempted Prostitution (Count 1) and Unlawful Prostitution Procurement Activities (Count 2).

"The defendant is not guilty of Attempted Prostitution and Unlawful Prostitution Procurement Activities if:

"(1) The defendant avoided the commission of the crime of Attempted Prostitution by abandoning his attempt to commit the crime of prostitution, and if necessary, then did everything that he could have done to prevent the commission of the crime;

"(2) The defendant avoided the commission of the crime of Unlawful Prostitution Activities by abandoning his attempt to commit the crime of Unlawful Prostitution Procurement Activities and if necessary, then did everything that he could have done to prevent the commission of the crime; and

"(3) The defendant's abandonment was under circumstances manifesting a voluntary and complete renunciation of the defendant's criminal intent.

"The burden of proof is on the defendant to prove the affirmative defense by a preponderance of the evidence."

Defendant argues:

"The trial court erroneously instructed the jury on the defense of renunciation to consider whether the defendant had abandoned or prevented the *inchoate* crime, 'attempted prostitution [and unlawful prostitution procurement activities],' rather than directing the jury to consider whether the defendant avoided committing the substantive crime, prostitution."

The state responds that, as to the renunciation instruction pertaining to the statutory offense, attempted prostitution, the court instructed the jurors just as defendant argues they should have been instructed:

"[T]he court instructed jurors that the defense applied if defendant avoided the crime of attempted prostitution, 'by abandoning his attempt to commit the crime of *prostitution*.' " (Emphasis in original.)

Thus, the state argues, the instruction, "as a whole[,] made it clear that the sole issue in dispute was whether defendant had renounced the substantive prostitution crime[.]" We agree. Finally, any error in the renunciation instruction pertaining to the ordinance was not prejudicial, given that the court merged the conviction under the ordinance into the conviction under the statute.

Affirmed.