DeVORE, J.
*702 Youth appeals from an amended judgment finding him within the jurisdiction of *439 the juvenile court based on acts that, if committed by an adult, would constitute second-degree criminal mischief, ORS 164.354.[1] Youth argues that, by adjudicating him for second-degree criminal mischief, the juvenile court violated his rights against double jeopardy under the state and federal constitutions, because the court had previously entered a judgment finding him to be within the court's jurisdiction for the same acts constituting the lesser-included offense of third-degree criminal mischief, ORS 164.345.[2] Youth contends that the initial judgment on the lesser-included offense acquitted him of the greater offense and precluded the amended judgment. The state argues that youth faced jeopardy only once because the finding in the initial judgment was merely a mistake that the court was permitted to correct later as part of a single ongoing process of adjudicating youth.
We agree with youth that the initial judgment finding him within the court's jurisdiction for acts constituting the lesser-included offense was an acquittal that barred a second adjudication on the original offense of second-degree criminal mischief. We therefore reverse the amended judgment and remand for entry of a dispositional judgment finding youth within the court's jurisdiction based on the lesser-included offense of third-degree criminal mischief.
*703 The relevant facts are not in dispute. After an altercation involving youth, the state filed a petition to find him within the juvenile court's jurisdiction for acts that, if committed by an adult, would constitute second-degree criminal mischief, ORS 164.354.[3] In colloquy at trial, the court declared that youth was within its jurisdiction based on acts that would constitute a lesser-included offense, third-degree criminal mischief. The verbal ruling stemmed from a misunderstanding about needing proof of property value as an element of the offense. During a lunch recess, the court realized its mistake. When court reconvened, the parties considered the effect of the error. They disputed whether the court could correct its spoken ruling so as to find youth responsible for acts that would constitute the greater offense. The court concluded the day's discussion saying that they would "track that issue" at the upcoming disposition hearing and, in the interim, the parties should brief it.
Despite that expressed uncertainty, the juvenile court proceeded to reduce its spoken ruling to writing immediately following the trial, entering a judgment finding youth within its jurisdiction based on acts constituting the lesser-included offense. On the judgment form, the court checked a box continuing the matter to a later date for disposition "& motion."[4]
At the subsequent hearing, the juvenile court decided that it had authority to change or amend the judgment, and it found youth *440 within its jurisdiction for the originally charged act, that, if committed by an adult, would constitute second-degree criminal mischief. The juvenile court *704 entered the amended judgment that is now on appeal, which includes a disposition based, in part, on the finding that youth committed acts that would constitute second-degree criminal mischief.
On appeal, youth assigns error to the juvenile court's decision to enter the amended judgment, arguing it violated his rights against double jeopardy under the Fifth Amendment to the United States Constitution and Article I, section 12, of the Oregon Constitution.[5] We review the juvenile court's interpretation of those constitutional provisions for legal error. State v. Rangel , 328 Or. 294, 298, 977 P.2d 379 (1999).
The basic principles are not in dispute. Youth and the state agree that, if the first judgment constituted an acquittal, it would preclude a second judgment on the same offense. U.S. Const., Amend. V ; Or. Const., Art. I, § 12 ; Evans v. Michigan , 568 U.S. 313, 318-19, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013) (for double jeopardy purposes, a final judgment includes an acquittal premised upon a substantive issue [as opposed to a procedural one] like the sufficiency of the evidence or anything relating to the ultimate question of guilt or innocence).[6]
The parties recognize that a finding of responsibility for acts related to the lesser-included offense, third-degree criminal mischief, would effectively acquit youth of acts related to the greater offense, second-degree criminal mischief. United States v. DiFrancesco , 449 U.S. 117, 135 n. 14, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (conviction of a "lesser included offense operate[s] as an implicit acquittal of the greater" (citation omitted) ); Currier v. Virginia , --- U.S. ----, 138 S.Ct. 2144, 2150, 201 L.Ed.2d 650 (2018) (courts treat "greater and lesser-included offenses as the *705 same offense for double jeopardy purposes, so a conviction on one normally precludes a later trial on the other" (citations omitted) ).
Youth asserts, and we understand the state to concur, that an acquittal precludes retrial even when premised upon a mistake of law, such as the court misconstruing statutory requirements for conviction.[7] Evans , 568 U.S. at 320, 133 S.Ct. 1069 (noting the fact that the ruling "was predicated upon a clear misunderstanding of what facts the State needed to prove" was "of no moment" for the purposes of double jeopardy analysis); DiFrancesco , 449 U.S. at 129, 101 S.Ct. 426 (the "public interest in the finality of criminal judgments is so strong" that acquittal bars future adjudication, even when "based upon an egregiously erroneous foundation" (citation and internal quotation marks omitted) ).
We reached that conclusion under analogous circumstances in State ex rel. Juv. Dept. v. Decoster , 23 Or. App. 179, 541 P.2d 1060 (1975). In that case, the juvenile court determined that the youth had committed acts that would constitute the charged offense of attempted burglary. Id. at 180, 541 P.2d 1060. However, wishing to avoid tarnishing the youth's record, the court entered a judgment finding the youth within its jurisdiction *441 for what it deemed lesser-included offenses, second-degree criminal mischief and second-degree criminal trespass. Id. at 180-81, 541 P.2d 1060. The youth appealed, arguing that neither crime constituted a lesser-included offense of attempted burglary. Id. at 181, 541 P.2d 1060. We agreed and reversed, declining the state's request to remand for a new hearing on the original charge. Id. We concluded that the "trial court sitting as finder of fact in effect acquitted the juvenile of burglary," and, as a consequence, double jeopardy precluded such a remand. Id. *706 Despite agreement on those principles, the parties disagree whether the juvenile court's initial judgment was sufficiently final to constitute an acquittal as to the original charge. Youth believes it was, stressing the finality of written judgments in general. The state believes the contrary, stressing that youth knew the initial judgment was tentative and did not detrimentally rely on it. The state urges the court to think of the hearings and decisional documents as a single evolving process. Our question becomes whether the initial judgment finding youth within the court's jurisdiction was conclusive so as to constitute an acquittal as to acts related to the original charge, thus precluding the subsequent judgment.
Although we have had no opportunity to directly address, for double jeopardy purposes, the finality of a juvenile court's initial judgment, the issue of finality commonly arises in civil cases in the context of claim preclusion, where claim preclusion was traditionally called res judicata . That doctrine, like the double jeopardy provisions, is fundamentally concerned with ensuring finality. See Crist v. Bretz , 437 U.S. 28, 33, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978) ("A primary purpose served by [the double jeopardy] rule is akin to that served by the doctrines of res judicata and collateral estoppel-to preserve the finality of judgments." (Citations omitted.) ); State v. Boyd , 271 Or. 558, 562 n. 1, 533 P.2d 795 (1975) (an objective of constitutional double jeopardy is serving "as a vehicle carrying the res judicata principle in the criminal law, supported by all the reasons for finality" (citation and internal quotation marks omitted) ). Cases on claim preclusion are instructive on the concept of finality insofar as similar principles are at play. Like double jeopardy, the doctrine of claim preclusion shares core values of providing repose to parties and preventing oppression by powerful adversaries.[8]
*707 Green v. United States , 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (the "underlying" and "deeply ingrained" goal of double jeopardy protections is limiting "the State with all its resources and power" from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity"); Dean v. Exotic Veneers, Inc. , 271 Or. 188, 192, 531 P.2d 266 (1975) (a "principal purpos[e] of res judicata [is] prevention of harassment of defendants by successive legal proceedings"). See also Nevada v. United States , 463 U.S. 110, 129, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (res judicata is demanded by "the very object for which civil courts have been established, which is to secure the peace and repose of society" (citation omitted) ); Kremer v. Chem. Const. Corp. , 456 U.S. 461, 466 n. 6, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (res judicata relieves the parties of the "vexation of multiple lawsuits" (citation omitted) ); LaFave et al. , 6 Criminal Procedure § 25.1(b) (4th ed. 2017) ("Finality [in the double jeopardy context] looks * * * to protecting the defendant against prosecutorial oppression."); Wright et al. , 18 Fed. Practice & Procedure Jurisdiction § 4403 (3d ed. 2018) (a public policy objective of res judicata is "protect[ing] a victorious party against oppression by a *442 wealthy, wishful, or even paranoid adversary" (citation omitted) ).
In cases on claim preclusion, Oregon courts have determined that "[a] judge may change his mind concerning the proper disposition between the time of a hearing and his final action which takes place when he signs the order disposing of the matter." State v. Swain/Goldsmith , 267 Or. 527, 530, 517 P.2d 684 (1974). On the other hand, once the trial court enters a written judgment or similarly final order, "we are bound by [it] even though the record indicates that [the court] meant to rule otherwise." State v. Cardwell , 48 Or. App. 93, 96, 615 P.2d 1198 (1980) (citation omitted). A "limited exception" to that general rule exists where the final order was ambiguous and internally inconsistent because of obvious clerical error. Id. at 96-97, 615 P.2d 1198. Under such circumstances, we can examine the record to discern the trial court's real intent. Id. Otherwise, the written language will prevail over spoken statements by the trial judge. Swain/Goldsmith , 267 Or. at 530, 517 P.2d 684 (noting that the determination of what the court *708 decided "is governed by the order which the district judge signed and not by any statement which he made at the conclusion of the hearing").
In this case, we conclude that the original judgment finding youth within the court's jurisdiction was final because the juvenile court committed it to writing and duly entered it as a judgment. Initially, the court made a spoken ruling, after which it was free to change its mind concerning the proper conclusion-until the time of the final action when the court signed and entered its decision on the matter. Id. However, because the court proceeded to enter the written judgment, we are bound by it even if the record could be read to indicate that the court meant to rule otherwise.[9] Cardwell , 48 Or. App. at 96, 615 P.2d 1198. The initial judgment finding youth within the court's jurisdiction does mention a future hearing regarding disposition "& motion," but it is unequivocal in finding youth within the court's jurisdiction for acts that would constitute third-degree criminal mischief. That adjudication of the allegations in the petition is neither "ambiguous" nor "internally inconsistent," and no one alleges that it was clerical error. Id. at 96-97, 615 P.2d 1198. The notation that a future hearing will determine a motion merely means that the court will determine whether it can change its determination about the acts that would constitute third-degree criminal mischief. The notation does not make the initial decision less of a final judgment. As a result, we have no basis to disregard the text of that initial determination and then to surmise, from the record, the juvenile court's original, underlying intent. See id. (disregarding scrivener's error to determine which count was intended to have been the basis of conviction).
Stressing the trial transcript, the state argues that the juvenile court intended, and youth understood, the *709 initial judgment to be tentative and inconclusive. Although the court and parties may well have spoken with uncertainty about the accuracy or malleability of the court's initial determination, the signed judgment taking jurisdiction-not the statements from the judge, the state, or youth-governs our determination of what was decided. Swain/Goldsmith , 267 Or. at 530, 517 P.2d 684. Because the initial judgment was a final adjudication regarding the acts alleged in the petition, double jeopardy concerns cannot be avoided.
We disagree with the state that Swisher v. Brady , 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978), indicates otherwise. In that case, the United States Supreme Court upheld a bifurcated juvenile adjudicatory process in which a master of the court proposed findings and recommendations, to which the state could file exceptions, and *443 which were subject to change before adoption by the juvenile court. Id. at 210-12, 219, 98 S.Ct. 2699. Swisher differs significantly from the case before us. Here, the first judgment was not merely proposed, but entered; and the juvenile court made changes, not before, but after adopting a first judgment. In contrast to Swisher , "the innocence of the accused [had] been confirmed by a final judgment." Id. at 214, 98 S.Ct. 2699 (citation omitted). Here, unlike Swisher , the amended judgment placed youth in jeopardy a second time for the same acts.
In this case, the juvenile court entered a judgment finding youth within its jurisdiction for a lesser-included offense, based on a substantive issue whether the prosecution sufficiently proved the offense's required elements. That determination had the legal effect of acquitting youth of the greater offense, precluding further adjudication of it. DiFrancesco , 449 U.S. at 135 n. 14, 101 S.Ct. 426 ; Currier , --- U.S. ----, 138 S.Ct. at 2150 ; Evans , 568 U.S. at 320, 133 S.Ct. 1069. Although the court intended to correct a mistake, it was constitutionally prohibited from doing so after entry of its judgment finding youth within the court's jurisdiction. That the court characterized its second ruling as an amendment does not avoid the problem. See Evans , 568 U.S. at 325, 133 S.Ct. 1069 ("Our decision turns not on the form of the trial court's action, but rather whether it serves substantive purposes or procedural ones." (Citation and internal quotation marks omitted.) ).
*710 We hold that, because the juvenile court entered a judgment finding youth within its jurisdiction for acts relating to the lesser-included offense, that judgment acquitted youth of acts relating to the greater offense. That acquittal precluded further adjudication of acts relating to the greater offense. See Decoster , 23 Or. App. at 181, 541 P.2d 1060 (refusing to remand for reexamination of jurisdiction based on acts related to the originally charged, greater offense). As a consequence, amendment of that initial judgment violated youth's right against double jeopardy under the Fifth Amendment and Article I, section 12. We therefore reverse and remand for entry of a dispositional judgment based on youth having committed an act that would constitute third-degree criminal mischief rather than second-degree criminal mischief.
Reversed and remanded.

ORS 164.354 provides, in part:
"(1) A person commits the crime of criminal mischief in the second degree if:
"(a) The person violates ORS 164.345, and as a result thereof, damages property in an amount exceeding $500; or
"(b) Having no right to do so nor reasonable ground to believe that the person has such right, the person intentionally damages property of another, or, the person recklessly damages property of another in an amount exceeding $500."

ORS 164.345 provides, in part:
"(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another."

The petition also charged youth with acts that, if committed by an adult, would constitute one count of attempted assault in the fourth degree, ORS 163.160, and two counts of harassment, ORS 166.065.

The document was labeled "JUDGMENT/ORDER FROM CONTESTED JURISDICTION HEARING." The state neither disputes that it was a judgment nor argues that the labels "judgment" or "order" matter for purposes of this case. See generally State ex rel. Juv. Dept. v. Tyree , 177 Or. App. 187, 191, 33 P.3d 729 (2001) (explaining that, "[b]y statute, juvenile court adjudications and dispositions of youth offenders are made by orders " (emphasis in original) ); ORS 419C.411 (requiring the court to enter "an appropriate order directing the disposition to be made of the case"); ORS 419A.205 (describing a disposition under ORS 419C.411 as an appealable judgment). For readability, we refer to the document simply as a judgment throughout this opinion.

In relevant part, the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," and Article I, section 12, provides that "[n]o person shall be put in jeopardy twice for the same offence."

These protections extend to juvenile proceedings. Breed v. Jones , 421 U.S. 519, 531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (jeopardy attached in the juvenile court when the judge began to hear evidence); State ex rel. Juv. Dept. v. Knox , 20 Or. App. 455, 463, 532 P.2d 245 (1975) (constitutional protections apply to juvenile proceedings involving charges for acts that would be criminal if committed by an adult).

The state cites Evans for the proposition that "acquittal, however erroneous it was, precludes reprosecution on the charge." (Citation, internal quotation marks, and brackets omitted.) At the same time, the state began oral argument saying, "The question in this case is does the constitution prohibit the court from correcting [the] mistake." In its brief, the state warned against a decision wherein "a judge's slip of the tongue-no matter how quickly corrected-would constitute an acquittal." Given those statements, we understand the state to argue that, if youth had been acquitted, the acquittal would have barred future adjudication regardless of its erroneous foundation. The state only contends that the court could correct its mistake because no acquittal occurred.

We do not suggest that the "Double Jeopardy Clause is simply res judicata dressed in prison grey." LaFave et al. , 6 Criminal Procedure § 25.1(b) (4th ed. 2017) (citation and internal quotation marks omitted). Res judicata has some additional policy concerns regarding judicial efficiency and the costs of relitigation. Id. It also engages in different analyses for certain questions. See, e.g. , Currier , --- U.S. ----, 138 S.Ct. at 2154 (noting the doctrines have different tests for determining when the past and current actions sufficiently overlap to bar future action). However, those distinctions are not germane to our limited inquiry into when a judgment becomes final.

The state contends that we should reach a different conclusion, following State v. Sperry , 149 Or. App. 690, 945 P.2d 546 (1997). In that case, we held that
"an oral ruling allowing a motion for judgment of acquittal is not preclusive, and may be rescinded, where, as here, neither the parties nor the court have detrimentally relied on that ruling * * * in the interval between the oral allowance and rescission."
Id. at 698, 945 P.2d 546 (emphases added). The current case, however, does not involve an oral proclamation; it involves a written judgment. For this reason, Sperry is distinguishable.