No. 450     May 21, 2025     625

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TERRY SCOTT ROGERS,
*Defendant-Appellant.*

Coos County Circuit Court
21CR43942; A178595

Andrew E. Combs, Judge.

Argued and submitted June 26, 2024.

Jason E. Thompson argued the cause for appellant. Also on the brief was Thompson Law, LLC.

Greg Rios, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for crimes committed against a minor family member. He raises three assignments of error. First, defendant argues that the trial court plainly erred when it did not instruct the jury, *sua sponte*, on Uniform Criminal Jury Instruction 1006A, which concerns vouching. Second, defendant argues that the trial court erred when it orally granted his motion for judgment of acquittal (MJOA) on Count 16, second-degree sexual penetration, ORS 163.408, and later set aside that ruling. Third, defendant argues that the trial court erred when it denied his MJOA on five counts of luring a minor, ORS 167.057.[1] As explained below, we conclude that the trial court did not plainly err in failing to instruct the jury on vouching. We further conclude that the court did not err when it rescinded its ruling on Count 16 because it had neither signed an order in open court nor entered an order and because the parties did not rely on the court's oral ruling to their detriment. Finally, we conclude that the evidence was legally sufficient to establish the elements of ORS 167.057(1). Accordingly, we affirm.

Because defendant's assignments of error each implicate a different standard of review, we address each assignment separately, stating the facts necessary to our disposition within each section below.

## JURY INSTRUCTION

In his first assignment of error, defendant argues that the trial court plainly erred by failing to provide Uniform Criminal Jury Instruction (UCrJI) 1006A, which concerns vouching, even though neither party requested the instruction. That instruction provides:

"It is for you and you alone to decide whether to believe a witness's testimony. Witnesses are not permitted to give opinions on whether another witness is, or was, being truthful in any given statement. Despite the court's efforts to prevent such testimony, a witness's testimony occasionally can be interpreted as an opinion on another witness's truthfulness in regards to a particular statement. If that

---

[1] ORS 167.057 has been amended since defendant committed the crimes; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

occurs, you should not give any weight to the witness's opinion about the credibility of that statement. You are the sole arbiters of the facts in this case and thus must disregard any other witness's opinion about the credibility of any account of the underlying events."

*Id.* In defendant's view, the trial court was required to give that instruction because the record contained ambiguous vouching.

We may review an unpreserved error when it is "plain." *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). "For an error to be plain error, it must be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring [us] to choose among competing inferences." *Id.* If we conclude that "a claimed error was [plain] error," we must "determine whether to exercise [our] discretion to review the error." *Id.* at 630.

At the outset, we do not understand defendant to argue that the trial court plainly erred by failing to strike unambiguous vouching testimony *sua sponte. See State v. Wellington*, 332 Or App 44, 55, 548 P3d 146, *rev den*, 373 Or 81 (2024) ("[I]t is plain error for a trial court not to strike testimony when unambiguous vouching testimony occurs." (Citation omitted.)); *see also State v. Lopez-Morales*, 332 Or App 686, 692, 551 P3d 1006, *rev den*, 372 Or 812 (2024) ("A trial court commits plain error by failing to exclude evidence *sua sponte* when there is true vouching[.]" (Internal quotation marks omitted.)). Rather, we understand defendant to argue that the trial court plainly erred in failing to give the uniform instruction because the record contained "many, many instances of indirect vouching, even if it wasn't direct vouching."[2]

We have reviewed the record and conclude that any error is not "obvious." *State v. Gaines*, 275 Or App 736, 746, 365 P3d 1103 (2015) ("[F]or us to decide whether instructional error is plain error, our analysis is normally

_____

[2] Although defendant's brief lists 27 pages from the trial transcript as examples of vouching, he identifies only a few specific statements that he asserts constituted "classic vouching." Our review of the record indicates that the testimony on those pages, when "read in context," is "at most, ambiguous vouching testimony," meaning that the witness "may or may not have vouched." *Wellington*, 332 Or App at 55.

limited to determining whether the error was 'obvious.'"). We have concluded that "[i]t is plain error to fail to instruct the jury on all material elements of a crime" and "to fail to instruct the jury on the elements of a defense or limitations on a defense." *State v. Worsham*, 332 Or App 154, 162-63, 548 P3d 849, *rev allowed*, 372 Or 787 (2024); *cf. State v. Moravek*, 297 Or App 763, 773, 444 P3d 521, *rev den*, 365 Or 533 (2019) ("We are aware of no cases, and the parties have presented none, in which a trial court erred for failing to *sua sponte* instruct a jury on either an affirmative defense or a defense that had not been raised by [the] defendant."). However, defendant identifies no such errors on appeal. Nor does defendant point to any case law that requires a trial court to give UCrJI 1006A when no party has requested it. Because "this court has never had that issue before it for resolution[,] *** defendant has not demonstrated the obviousness of the posited unpreserved error." *State v. Serrano*, 355 Or 172, 182, 324 P3d 1274 (2014), *cert den*, 576 US 1037 (2015); *see also Dept. of Human Services v. M. E.*, 297 Or App 233, 244, 441 P3d 713 (2019) (concluding that "the issue present[ed] a question of first impression without an obvious answer" when we were "unaware of any case resolving this issue of statutory construction" and the appellant "fail[ed] to point to any case law holding that plain error occurred under the circumstances").

Seeking a different result, defendant argues that the trial court "failed to instruct the jury on any matter of law even remotely concerning 'vouching' testimony, as UCrJI 1006A provides" and that it was required to do so under ORCP 59 B. The record does not support defendant's argument. Here, the trial court instructed:

"As jurors, you have the sole responsibility to determine which testimony or portions of testimony you will or will not rely on in reaching your verdict."

The court also instructed:

"It is your sole responsibility to make all the decisions about the facts in this case. You must evaluate the evidence to determine how reliable or how believable that evidence is.

"In evaluating each witness' testimony, however, you may consider such things as the manner in which the witness

testifies, the nature or quality of the witness' testimony, evidence that contradicts the testimony of the witness, evidence concerning the bias, motives, or interests of the witness."

Accordingly, it is not "obvious" that the trial court had a *sua sponte* duty to provide the uniform vouching instruction when the court had provided other instructions that it was solely the jury's responsibility to find the facts and evaluate witness credibility. *See, e.g.*, *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993) ("It is not error for a trial court to refuse to give a requested instruction if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction."); *State v. Leers*, 316 Or App 762, 770, 502 P3d 1130, *rev den*, 369 Or 733 (2022) ("A trial court does not err in refusing to give a proposed instruction—even if the proposed instruction is legally correct—if the substance of the requested instruction is covered fully by other jury instructions or if the requested instruction is not necessary to explain the particular point of law to the jury.").

Finally, we disagree with defendant's argument that the instruction was required "[l]ike with other general instructions that the court is giving in every criminal trial. The court is giving all kinds of other instructions *** even if nobody asks for it." The Supreme Court has explained that the Uniform Criminal Jury Instructions "are drafted by a committee of members of the Oregon State Bar and *are not themselves the law*." *State v. Lopez-Minjarez*, 350 Or 576, 583 n 4, 260 P3d 439 (2011) (emphasis added); *see also State v. Oliphant*, 347 Or 175, 197-98, 218 P3d 1281 (2009) (concluding that a uniform criminal jury instruction was "incorrect and should not be included in the instructions to the jury during the trial on remand"). The trial court did not plainly err.

## DOUBLE JEOPARDY

In his second assignment of error, defendant argues that "the trial court erred by reversing its order granting" his MJOA on Count 16 because that ruling "violated defendant's right to be free from double jeopardy."[3] We review for legal error. *State v. Potter*, 236 Or App 74, 82, 234 P3d 1073 (2010).

___

[3] The state charged defendant with three counts of second-degree unlawful penetration, ORS 163.408 (Counts 9, 13, and 16). Defendant did not move for a judgment of acquittal on Counts 9 or 13.

As relevant to this assignment of error, Count 16 alleged that defendant committed second-degree unlawful sexual penetration, ORS 163.408, "between June 25, 2015, and June 24, 2016" when the victim was "under the age of 14 years."[4] At trial, the victim testified that defendant began sexually abusing her when she was 10 years old and when she and her family lived in a two-story house (first house). The victim further testified that the sexual abuse occurred throughout the time that she lived at the first house. The jury also heard testimony that, when the victim was 14 years old, the family moved to a three-story house that had a pantry (second house).

After the state rested, defendant moved for judgment of acquittal on Count 16. Defendant argued that the victim's testimony about defendant's conduct "while in the pantry" did not establish the penetration element of the crime. The state conceded that count. The trial court granted the motion and stated, "Okay. So 16 will go away[.]"

After defendant gave his closing argument, but before the prosecutor made his rebuttal argument, the prosecutor asked the court to reconsider its ruling on Count 16. The prosecutor explained that Count 16 alleged that defendant committed the crime while the victim lived at the first house and that defendant's MJOA was based on testimony about defendant's conduct at the second house.

"[THE PROSECUTOR]:   I realize the state agreed to it at the time [defense counsel] pointed out that the digital penetration did not occur in the [second] house, and I agreed with that. I did the math wrong.

"The Count 16 was actually while the victim was in eighth grade at the [first] house. I did not realize that. [Defense counsel] mentioned the pantry in the [second] house. I did the math incorrectly. And I would ask that you vacate that judgment that I—I had previously agreed to.

"Nothing substantive has happened as far as evidence goes. There's no new evidence that I'm asking you to reconsider, just the poorly done math, your honor."

---

[4] ORS 163.408(1) provides, in relevant part, that "a person commits the crime of unlawful sexual penetration in the second degree if the person penetrates the vagina, anus or penis of another with any object and the victim is under 14 years of age."

The trial court stated that it would "do some math" while the prosecutor made his rebuttal argument. After the rebuttal argument, the trial court ruled:

"[THE COURT]:   I am going to vacate, set aside *** to the extent [there] was an order and to the extent I signed a judgment of dismissal with respect to Count 16, I'm going to set that aside. It was based upon I call it a mistake, and that is reliance upon the state's, I would say, quasi stipulation that it should be dismissed, and I relied upon that.

"And after doing the math, the math seems to add up with what I find to be the testimony as clarified, especially this morning, as far as the testimony is concerned regarding her age and when *** she was born and what these allegations—what these allegations pertained to."

The trial court then instructed the jury on the elements of Count 16.

Outside the presence of the jury, defendant objected.

"[DEFENSE COUNSEL]: I just pulled up ORS 136.445, which reads, 'In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense.'

"It's my position, your honor, you signed the order granting the dismissal of Count 16; therefore, jeopardy would attach, and that charge 16 cannot be reinstated against [defendant]."

The court stated that its new ruling stood, and the following exchange occurred.

"[THE COURT]:   And so it fits within [the state's] theory of what happened at the [first] house. I think everyone, including myself, was assuming that this was based on some allegation of an incident in the pantry.

"[DEFENSE COUNSEL]:   That is correct, your honor, and I simply just wanted to preserve the record."

We conclude that the trial court did not err. Our decision in *State v. Sperry*, 149 Or App 690, 697, 945 P2d 546

(1997), *rev den*, 328 Or 275 (1999), is instructive here. In that case, we began our analysis with the text of ORS 136.445, the same statute that defendant relied on below.[5] *Id.* at 698. We explained that we "[were] not persuaded that a trial court's oral pronouncement is, by itself, a 'determination' triggering the statutory bar against a subsequent or renewed prosecution." *Id.* at 697. Accordingly, we reiterated the "principle that a trial court's oral ruling is not binding until reduced to writing and, unless executed in open court, is not effective until filed with the clerk." *Id.*; *see also* ORS 3.070 ("If signed other than in open court, all such orders * * * shall be transmitted by the judge to the clerk of the court * * * and shall become effective from the date of entry in the register."). Further, "an oral ruling allowing a motion for judgment of acquittal is not preclusive, and may be rescinded, where * * * neither the parties nor the court have detrimentally relied on that ruling." *Sperry*, 149 Or App at 698.

On appeal, defendant relies on our decision in *State v. C. C. W.*, 294 Or App 701, 433 P3d 437 (2018), and argues that the trial court "[bound] itself and all future proceedings regarding count 16" by "sign[ing] the written order." That case does not assist defendant. In *C. C. W.*, the juvenile court "enter[ed] a judgment finding youth within its jurisdiction based on acts constituting" third-degree criminal mischief. *Id.* at 703. After a subsequent hearing, the juvenile court entered an amended judgment finding youth within its jurisdiction for second-degree criminal mischief. *Id.* We held that the initial judgment had "the legal effect of acquitting youth of the greater offense" and that jeopardy attached when the juvenile court entered that judgment. *Id.* at 709. As a result, we concluded that the "amendment of that initial judgment violated youth's right against double jeopardy" under the state and federal constitutions. *Id.* at 710. In so concluding, we emphasized that the entry of the initial judgment triggered the youth's double jeopardy protections,

---

[5] That statute provides:

"In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

and we distinguished cases in which trial courts made preliminary and/or oral rulings. *Id.* at 708 & n 9, 709.

Here, the record demonstrates that the trial court orally granted the MJOA but did not execute an order in open court or enter an order in the court register concerning the MJOA. Instead, after the prosecutor asked the court to reconsider the MJOA, the court stated, "*to the extent I signed* a judgment of dismissal with respect to Count 16, I'm going to set that aside." (Emphasis added.) The court's oral ruling would only have become effective after being reduced to writing and signed in open court or signed and entered in the court register. *See Sperry*, 149 Or App at 697; *see also* ORS 3.070 (providing that "orders * * * shall become effective from the date of entry in the register"). Under *C. C. W.*, the court's oral ruling did not trigger defendant's double jeopardy protections.

Moreover, the record indicates that "neither the parties nor the court * * * detrimentally relied" on the court's oral ruling on Count 16. *Sperry*, 149 Or App at 698. Defendant's opening statement articulated a theory that the victim held a grudge against defendant and that her "allegations" were "patently false." He reinforced that theory in his closing argument by arguing that the victim had "a bone to pick" with defendant and that the police conducted a "biased" investigation. As a consequence, we conclude that the trial court did not err in rescinding its oral ruling.

MOTION FOR JUDGMENT OF ACQUITTAL

In his third assignment of error, defendant argues that the trial court erred when it denied his MJOA on five counts of luring a minor, ORS 167.057. "We view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. King*, 278 Or App 65, 66, 373 P3d 1205 (2016).

Here, the state alleged that defendant "did unlawfully and knowingly furnish to a minor a visual representation of sexual conduct for the purpose of inducing the minor to engage in sexual conduct." At trial, the victim testified that defendant asked her for massages and that, after the

victim began each massage, defendant sexually abused her. According to the victim, defendant used an iPad to "incorporate[]" pornography and that the pornographic videos depicted adults giving massages and then having sex. After the state rested, defendant made a motion for judgment of acquittal, arguing that the state failed to establish that "defendant ever furnished the pornography to [the victim] for purposes of having her engage in sexual behavior." The trial court denied the motion.

> "[THE COURT]:   I'm going to let the luring stay in, let the jury make a determination on that rather than me take that decision away from the jury, and the jury can determine whether or not this was done for the purpose of inducing. There certainly are facts in the record with respect to her knowledge of this, with respect to the activities that occurred, the fact that there was massage videos, and what was going on there with massage."

The jury found defendant guilty on all counts.

On appeal, defendant renews his argument that no rational juror could have found the elements of ORS 167.057(1)(a). The state responds that the evidence was legally sufficient to support the convictions. We agree with the state's argument.

"A person commits the crime of luring a minor if the person *** [f]urnishes to, or uses with, a minor *** a visual representation or explicit verbal description *** of sexual conduct for the purpose of inducing the minor *** to engage in sexual conduct." ORS 167.057(1)(a). "Furnishes" means "to give *** or otherwise provide." ORS 167.051(1). We do not understand defendant to dispute the evidence that he played pornographic videos while alone with the victim. Rather, defendant argues that the state failed to prove that he played the pornographic videos "for the purpose of" inducing the victim to engage in sexual conduct. According to defendant, "the pornography was not used to influence or stimulate [the victim]" but instead "was used to stimulate defendant."

Because the legislature did not define the term "inducing," "we consider its ordinary meaning." *State v. Walker*, 356 Or 4, 14, 333 P3d 316 (2014); *see also State v.*

*Perry*, 336 Or 49, 53, 77 P3d 313 (2003) ("In interpreting the words of a statute enacted many years ago, we may seek guidance from dictionaries that were in use at the time."). "Inducing" is the present participle of "induce." *Webster's Third New Int'l Dictionary* 1154 (unabridged ed 2002). In turn, the relevant definitions of "induce" are "to inspire, call forth, or bring about by influence or stimulation," and "to move and lead (as by persuasion or influence) * * * prevail upon : INFLUENCE, PERSUADE." *Id.* (boldface omitted). In addition, the entry for "induce" includes a discussion of that word and its synonyms, explaining the connotations associated with different words of similar meaning. Regarding "induce" the note explains, "PERSUADE, PREVAIL: INDUCE may indicate overcoming indifference, hesitation, or opposition[.]" *Id.* (boldface omitted).

We have reviewed the record and, viewing the evidence in the light most favorable to the state, we conclude that a rational juror could have found that defendant played the pornographic videos "to bring about" sexual conduct from the victim or to influence or persuade the victim to engage in that conduct. Here, the victim testified that the videos depicted adults giving massages and engaging in conduct "like literally what [she] was doing." The videos also depicted the adults having sex. The victim further testified that defendant asked her "if [she] knew what sex was, and that scared [her] because [she] kind of figured what was coming next." After the victim said "no," defendant responded, "Do you want to learn?" We conclude that the foregoing evidence was legally sufficient to establish that defendant played the pornography "for the purpose of inducing" the victim to engage in sexual conduct. ORS 167.057(1)(a). The trial court did not err when it denied the MJOA.

Affirmed.